UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | Cr. No.: 6:10-cr-00247-GRA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| Shawn Demetrius White, | ) | (Written Opinion) |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter comes before the Court on the sentencing of Defendant Shawn White. This Opinion and Order supplements the findings made on the record at the sentencing hearing held on February 9, 2011. Specifically, this Order addresses whether the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372 ("Fair Sentencing Act," or "Act") applies to Defendant.

**Background**

On August 7, 2009, Defendant sold 5.56 grams of crack cocaine to a confidential informant. The statute in effect on that date required a five-year minimum prison term for possessing five or more grams of crack with intent to distribute. *See* 21 U.S.C. § 841(b)(1)(B) (2006).

Defendant pled guilty to the offense on August 25, 2010. Earlier that month, though, the President signed the Fair Sentencing Act into law. Effective August 3, 2010, the Act raised the amount of crack cocaine required to trigger the five-year mandatory minimum from five grams to twenty-eight grams. 124 Stat. at 2372.

The issue in this case is whether the Act applies to Defendant. If the pre-Act law applies to Defendant, he will face the five-year mandatory minimum sentence. However, if the Act applies to Defendant, he will not be subject to the mandatory minimum.

## Discussion

The Act contains no specific provision stating whether, or to what extent, its provisions are to apply retroactively.[1] However, this Court concludes that applying the Act to all offenders sentenced after August 3, 2010, comports not only with the text and purpose of the Act, but also with common sense and fair dealing.

The analysis begins with 1 U.S.C. § 109, commonly known as the "Savings Statute." Section 109 provides as follows:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any

---

[1] The Fourth Circuit Court of Appeals has held that the Act does not apply to individuals sentenced *prior to* the Act's effective date of August 3, 2010. *See United States v. Evans*, No. 09-5086, 2010 WL 4745624, at *1 n.* (4th Cir. Nov. 23, 2010) (per curiam); *United States v. Nelson*, No. 09-4297, 2010 WL 4676614, at *1 (4th Cir. Nov. 18, 2010) (per curiam); *United States v. McAllister*, No. 10-4387, 2010 WL 4561395, at *1 n.* (4th Cir. Nov. 12, 2010) (per curiam); *United States v. Wilson*, No. 10-4160, 2010 WL 4561381, at *2 (4th Cir. Nov. 12, 2010) (per curiam). However, none of those opinions addresses the import of the Act on the circumstances present in this case—*i.e.*, where a defendant sells crack cocaine before the passage of the Act but neither pleads guilty nor has a sentence imposed until *after* the Act becomes effective. This Court therefore finds those opinions inapplicable to the case at bar.

>     proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

The Savings Statute speaks only in terms of "repeals," but it applies with equal force to statutory amendments. *United States v. Mechem*, 509 F.2d 1193, 1194 n.3 (10th Cir. 1975) (per curiam).

Although the Savings Statute often bars ameliorative statutes from having retroactive effect, the ultimate object of the Statute is that it be construed "in order to give effect to the will and intent of Congress." *Hertz v. Woodman*, 218 U.S. 205, 217 (1910). Congress's intent for a statute to apply to pending cases need not be expressed by explicit language in the statute itself; instead, it may be revealed by studying the context of the statute as a whole. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Abbott v. United States*, 131 S. Ct. 18, 27 (2010) (finding strong contextual support for its interpretation of a statutory provision and stressing that a contrary reading "would result in sentencing anomalies Congress surely did not intend."). Accordingly, an ameliorative criminal sentencing law can apply in a pending case if Congress's will for such effect is manifested expressly or "by fair implication." *Warden v. Marrero*, 417 U.S. 653, 659 n.10 (1974); *see also Great N. Ry. Co. v. United States*, 208 U.S. 452, 462 (1908) (the Savings Statute "cannot justify a disregard of the will of Congress as manifested, either expressly or by necessary implication, in a subsequent enactment.").

The question, then, is whether Congress has manifested an intent for the Fair Sentencing Act to apply to offenders like Defendant, either expressly or by fair implication.

The Act contains several provisions relevant to this inquiry. The preamble of the Act states that the Act's purpose is to "restore fairness to Federal cocaine sentencing." 124 Stat. at 2372. As mentioned above, the Act adjusted the threshold amount of crack cocaine required to trigger a five-year mandatory minimum sentence; it made a similar ameliorative adjustment for the ten-year mandatory minimum sentence by adjusting the threshold amount for that minimum from 50 grams to 280 grams. *Id.* Importantly, in Section 8 of the Act, Congress directed the United States Sentencing Commission to promulgate "conforming" amendments to the Sentencing Guidelines in order to "achieve consistency" with the Act's other provisions. *Id.* at 2374. These amendments were to be issued "as soon as practicable," and no later than November 1, 2010. *See id.*

With regard to crack cocaine, the base offense levels in the Guidelines' Drug Quantity Table have historically been based upon the minimum sentence-triggering crack amounts in 21 U.S.C. § 841. *See* U.S.S.G. § 2D1.1, cmt. (backg'd) (2010) ("The base offense levels in § 2D1.1 [the Drug Quantity Table] are either provided directly by the Anti-Drug Abuse Act of 1986 or are proportional to the levels established by statute."). As mentioned above, though, the Act adjusted those crack amounts upward. Accordingly, in following Congress's explicit directive to

make the Guidelines conform to, and consistent with, the Act, the Sentencing Commission adjusted the crack cocaine base offense levels downward, in proportion to the new threshold quantities. *See* U.S.S.G. Amend. 748 (Nov. 1, 2010). This amendment has been in effect since November 1, 2010. The current Guidelines cannot "conform" and "achieve consistency" if the law upon which they are based does not apply to all cases going forward. Rather, they can do so only if the law on which they are based is, itself, consistent. *See, e.g.*, *United States v. Elder*, No. 1:10-cr-132-RWS/AJB, 2011 WL 294507, at * 5 (N.D. Ga. Jan. 27, 2011) ("Not applying the [Fair Sentencing Act] to Defendants would result in mandatory sentences that fail to conform with the applicable sentencing guideline ranges."); *United States v. Douglas*, No. 09-202-P-H, 2010 WL 4260221, at *4 (D. Me. Oct. 27, 2010) (the current Guidelines "cannot be 'conforming' and 'achieve consistency' (Congress's express mandate) if they are based upon statutory minimums that cannot be effective to a host of sentences over the next five years until the statute of limitations runs on pre-August 3, 2010 conduct."). Taken in conjunction with the title and stated purpose of the Act, the mandate to the Sentencing Commission in Section 8 indicates that Congress intended and expected the Act's amended triggering quantities to apply immediately, regardless of when the offense was committed.

Furthermore, the Guidelines must be applied as-amended at Defendant's sentencing. *See* 18 U.S.C. § 3553(a)(4)(A) (a sentencing court is to apply the

version of the advisory Guidelines "in effect on the date the defendant is sentenced"). This is so, even though Defendant committed the offense in question prior the Fair Sentencing Act's effective date. By requiring that the Sentencing Commission issue the changes no later than November 1, 2010, Congress expressly mandated this outcome for Defendant and others similarly situated. As the *Douglas* court stated, "[i]t would be a strange definition of 'conforming' and 'consistency' to have these new amended Guidelines go into effect while the old and therefore inconsistent statutory minimums continue." *Douglas*, 2010 WL 4260221, at *5. This Court thus concludes that Congress expressed an intent for the Fair Sentencing Act to apply to offenders sentenced after August 3, 2010. Therefore, the Act applies to such offenders.

Even absent such an express manifestation, though, this Court finds that the Act fairly implies an exception to the Savings Statute's retroactivity bar. Such an exception may be implied "where essential to prevent 'absurd results' or consequences obviously at a variance with the policy of the enactment as a whole." *United States v. Rutherford*, 442 U.S. 544, 552 (1979). The Supreme Court has imputed to Congress "an intention to avoid inflicting punishment at a time when it can no longer further any legislative purpose, and would be unnecessarily vindictive." *Hamm v. City of Rock Hill*, 379 U.S. 306, 308 (1965).

Here, the Act's passage was prompted by widespread recognition that the substantial differences in punishment for crack and powder cocaine offenses

furthered no legitimate legislative purpose and that these differences resulted in significant, unwarranted racial disparities in federal drug sentencing. As such, it would be an absurd result for courts to continue imposing mandatory minimum sentences that are contrary to a statute that Congress itself has described as "[a]n Act to restore fairness to Federal Cocaine sentencing." Indeed, in light of Congress's purpose behind the Act, "what possible reason could there be to want judges to *continue* to impose new sentences that are not "fair" over the next five years" while the statute of limitations runs on pre-August 3, 2010 conduct? *Douglas*, 2010 WL 4260221, at *5.

As a matter of statutory interpretation, this Court holds that, whether by express statement or fair implication, Congress did not intend for courts to continue to impose the harsher, pre-Act mandatory minimum sentences simply because the offense occurred before the Act's effective date.[2]

---

[2] The Court's analysis is supported by a letter to Attorney General Eric Holder from Senators Richard Durbin and Patrick Leahy, the Act's lead sponsors. In the letter, the Senators urged the Attorney General to instruct federal prosecutors "to seek sentences consistent with the Fair Sentencing Act's reduced mandatory minimums for defendants who have not yet been sentenced, *regardless of when their conduct took place*." Letter from Richard Durbin and Patrick Leahy, Senators, United States Senate, to Eric Holder, Attorney General, United States Department of Justice 2 (Nov. 17, 2010) (emphasis added). The Senators stated that because the "goal in passing the Fair Sentencing Act was to restore fairness to Federal cocaine sentencing as soon as possible," the Act's "reduced crack penalties should apply to defendants whose conduct predates enactment of the legislation but who have not yet been sentenced. Otherwise, defendants will continue to be sentenced under a law that Congress has determined is unfair for the next five years, until

In sum, imposing the harsher, pre-Act mandatory sentence upon Defendant would be manifestly unfair and contrary to the Act. This Court concludes that the Fair Sentencing Act's mandatory minimum sentence amendments apply to Defendant. Because he did not possess at least twenty-eight grams of crack cocaine, he is not subject to the current five-year mandatory minimum. After considering the sentencing factors in 18 U.S.C. § 3553(a), and for the reasons explained at the sentencing hearing, a sentence of twenty-five (25) months imprisonment, followed by four (4) years of supervised release is sufficient, but not greater than necessary, to effectuate the goals of sentencing in this case. Defendant must pay the mandatory $100 special assessment fee.

**IT IS SO ORDERED.**

G. Ross Anderson, Jr.
Senior United States District Judge

February  9 , 2011
Anderson, South Carolina

---

the statute of limitations runs on conduct prior to the enactment of the Fair Sentencing Act. This absurd result is obviously inconsistent with the purpose of the Fair Sentencing Act." *Id.* at 1.